SUCCESSORS OF L. VILLAMIL & Co., Plaintiff and Appellant, *v.* JUAN G. GALLARDO, Treasurer of Puerto Rico, Defendant and Appellee.

No. 4837. Argued January 23, 1930.—Decided July 21, 1930.

*Luis Muñoz Morales* for appellants. *James R. Beverley, Attorney General,* and *A. Ortiz Toro, Assistant Attorney General,* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

This is an action brought for the refund of taxes paid under protest. The plaintiff, a commercial partnership domiciled in San Juan, alleged in its complaint that on June 24, 1920, it rendered its income tax return for the year from April 1, 1919, to March 31, 1920, and that based on it the Treasurer made a determination of the taxable income; that the plaintiff asked for a reconsideration thereof and, while an appeal was pending before the Board of Review and Equalization, the Legislature of Puerto Rico enacted Act 43,

approved July 1, 1921, known as "The Income Tax Law"; that by reason thereof all the proceedings were stayed and on September 9, 1921, the Treasurer notified the plaintiff firm that in accordance with section 42 of the above act and the returns rendered by it its income tax was assessed as follows:

1. Net income _____ $122, 882. 96
2. Capital invested_____ 272, 138. 54
3. Taxes due _____ 10, 537. 80;

that the plaintiff appealed from that assessment to the Board, which on January 30, 1922, rendered the following decision:

1. It refused to accept the deduction of $5,153.99, on account of uncollectible notes.
2. It accepted the deduction of the value of United States bonds.
3. It included in the capital invested
    (a) the undistributed benefits from 1918 amounting to $191,665.64 and
    (b) the credits in current account of the partner Gumersindo Suárez amounting to $200,000;

that in conformity with the above decision the Treasurer made a new assessment as follows:

1. Net income _____ $115, 362. 96
2. Capital invested_____ 663, 805. 18,
3. Taxes due _____ 5, 604. 92,

and that the plaintiff agreed to pay and did pay the above tax of $5,604.92.

The plaintiff further alleged that afterwards, on January 10, 1925, the Treasurer notified it that it had to pay the taxes according to the following new assessment:

1. Net income _____ $154, 171. 06
2. Capital invested_____ 663, 805. 18
3. Taxes due _____ 9, 292. 58;

that the plaintiff feeling aggrieved appealed from that assess-

ment to the Board, which on June 24, 1926, decided the appeal as follows:

1. Net income _____ $140, 505. 96
2. Capital invested_____ 272, 138. 54
3. Taxes due _____ 14, 544. 39;

that the Treasurer proceeded to make the corresponding assessment, deducting from the sum of $14,544.39 the amount of $5,604.92 already paid by the plaintiff, who paid the difference under protest and applied for redress to the courts.

The plaintiff alleged then in his complaint that the Treasurer had no authority to make the new liquidation of 1925, and that the decision made by the Board in 1922 was and is final and conclusive.

Lastly, and in case it was decided that the Board and the Treasurer were legally empowered to act in 1925 and 1926, the plaintiff alleged that the decision of the Board and the consequent computation of the Treasurer were wrong on the ground that, as the items of $191,665.64 and $200,000 already referred to should have been considered as undistributed profits, they should have been included in the invested capital of the plaintiff in accordance with the statute.

The defendant admitted in his answer the facts as alleged but denied that either he or the Board had no authority to act as they did. He alleged that the items of $191,665.64 and $200,000 were excluded from the invested capital of the plaintiff partnership, the former because it belonged to the preceding partnership of which the plaintiff was only a liquidating partnership, and the latter because it was a credit of the partner Gumersindo Suárez on which the plaintiff was paying interest to the said partner.

The defendant alleged as new matter that the admission by the Board of the deduction of the interest paid to the partner Suárez had as a consequence the deduction from the capital of the sum of $200,000; that the amount of $191,665.60 was not made up by the profits of the plaintiff partnership

but by the profits of another partnership which had been wound up, such profits arising to a great extent from private transactions of its partners; that it does not appear from the partnership contract that the plaintiff is the successor of the other partnership, but rather it appears that it took upon itself to liquidate it, and that it is expressly stipulated in the articles of association of the plaintiff that it shall be governed by the provisions of the Code of Commerce, which provides in its section 119 the manner of dissolving commercial partnerships.

The defendant further alleged as special defenses: That the plaintiff is estopped from attacking the last decision of the Board because it applied to the same for redress under its jurisdiction, and that the Code of Commerce prohibits private agreements between partners, the only valid ones being those arising from the articles of copartnership.

The issue was thus joined and the case went to trial. The court having dismissed the complaint, an appeal was taken by the plaintiff, which assigned in its brief the commission of five errors by the court as follows: (1) Error of law in finding that the Treasurer had authority to make the assessment of 1925 after the lapse of three years from the decision of the Board without making a new investigation; (2) error of law in finding that the Treasurer was not bound to accept as final and conclusive the decision of the Board in 1922; (3) error of law in finding that the Board had not acted *ultra vires* when rendering its decision of 1926; (4) error of law in deciding that the plaintiff was estopped from denying the jurisdiction of the Board after it had submitted itself to the same, and (5) error of law in finding that the Board had not violated by its decision of 1926 subdivision (*b*), section 18 of Act No. 43 of 1921.

The first four errors assigned involve the same question: whether or not the Treasurer and the Board had authority to make a new assessment on the return of the plaintiff. In the last assignment the question is submitted on its merits.

The applicable statute is Act No. 43 of 1921. No issue has been raised in this respect. Its retroactive effect, expressly declared by the act itself and sanctioned by the jurisprudence, is not questioned.

Sections 41, 42, and 43 of said Act read as follows:

### "PROCEDURE FOR LEVYING THE TAX

"Section 41.—As soon as the Treasurer of Puerto Rico receives an income return he shall levy and collect such tax as the taxpayer may owe in accordance with his own return.

### "VERIFICATION OF RETURNS

"Section 42.—As soon as possible the Treasurer of Puerto Rico shall verify the income returns by making a study of the returns rendered by the taxpayers, and of such additional returns as he may require, and of balances or inventories, and by means of such investigations as he may make and he shall determine the net income of each taxpayer and shall compute the tax due by each, and shall serve notice of both things on the taxpayer or his legal representative.

"Section 43.—If the amount due by a taxpayer as shown by the aforesaid investigation is greater than the amount paid under section 41, the difference shall be paid to the Treasurer of Puerto Rico within a period of fifteen days after proper notice shall have been mailed."

The procedure such as is followed by the Treasury Department is to make a speedy assessment of the tax from the return of the taxpayer, it being understood that the conclusion reached may be altered if a more careful examination or a subsequent investigation shows it to be erroneous, whether or not in favor of the taxpayer. It is something required by a speedy transaction of the business and the intricate nature of many of the returns rendered. The application of new laws and the consideration of very distinct situations requiring a careful study are involved.

On the other hand, taxes should be speedily collected, within the fiscal year, and it is both in the interest of the government and the taxpayer, and above all for the sake of an equitable and uniform collection of taxes, that said pro-

cedure has been followed and which in our opinion is permitted by the terms in which the statute has been drafted.

This seems to be admitted by the appellant itself, and its opposition refers really to the authority to act under the circumstances of the case, that is, the three years elapsed from the action not only by the Treasurer but by the Board also, and the absence of a new investigation.

As regards the time elapsed, there must be borne in mind section 40 of the above Act No. 43 of 1921, which provides:

"That any tax assessable, pursuant to the provisions of this Act, may be computed and levied by the Treasurer within five years from and after the date on which the return was rendered or should have been rendered; and no proceedings shall be brought for the collection of said tax after the expiration of five years.

"In case that, for the purpose of evading payment of the tax, no proper returns are made, and in case of false returns, the amount of the tax assessable may be determined and the tax collected, together with the penalties specified in this Act, at any time without any limitation."

So long as the five years are not elapsed in cases similar to the case at bar where fraud is not involved, we think that the Treasurer is authorized to act. Of course, he must do so within the shortest possible time, as *bona fide* taxpayers should not be unnecessarily inconvenienced, and in many cases persons who at the proper time might have been able to pay without any inconvenience to themselves might later on find it difficult to make the disbursement; but the statute has specified a period of five years which must be borne in mind. The mere lapse of three years, therefore, did not take away from the Treasurer his authority to act.

As to whether or not a new investigation was made, the district court, in weighing the evidence, said:

"Witness Carlos F. Figueras, an employee of the income tax division, testified that three investigations had been made of the books of the company, the last of them being on January 17, 1922, and a readjustment was finally made of the previous computation

which was notified on January 19, 1925; and there is nothing from the evidence to show that the Treasurer of Puerto Rico acted arbitrarily when making the computation and assessing the tax, the presumption being, in the absence of proof to the contrary, according to subdivision 15 of sec. 102 of the Law of Evidence, that he performed regularly his official duty.''

Now, as it is provided by the statute that the decisions of the Board shall be final, did the Treasurer and then the Board have authority to intervene *de novo* in the matter?

The district court found that the decisions of the Board were final as to the taxpayer who used up thereby the administrative remedies, there remaining to him a recourse to the courts by paying under protest; but that they were not so as to the Treasurer. In our opinion that is a logical construction which enables the mechanism of the law to function properly. If a taxpayer is in disagreement with the computation of the Treasurer, he appeals to the Board. The latter as a rule bases its investigation on the return of the taxpayer and the decision of the Treasurer. It is a speedy remedy, within the very executive province of the Government, which may be decided within a few months, perhaps days. If the remedy had been meant to prevent the Treasurer from taking action again, such action would not have been confined within the limitation of five years.

It is true that the plaintiff's case is an extreme one which very rarely occurs, because two opportunities presented themselves for properly classifying the items in question; but we think that if the last classification is really the proper one, the action of the Treasurer and of the Board is justified. There is no injustice in collecting all that is due. When the taxpayer makes his first payment he is aware that to a certain extent it is a provisional one, as his return is subject to a subsequent investigation. There have been cases where, by reason of a subsequent investigation, the taxpayer has been refunded part of his first payment.

Having reached the conclusion that the Treasurer had

legal authority to act in the present case in 1925, we feel bound to conclude that the Board had it also, especially as the taxpayer himself took an appeal thereto.

The taxpayer alleges that it had no other remedy. We disagree. If it was a case of want of jurisdiction on the part of the Treasurer, the courts were open to appellant for a determination of the question.

The authority of the Treasurer and of the Board having been shown, let us see whether it was properly used.

Subdivision (b), sec. 18 of said Act No. 43, claimed by the appellant to have been violated, says:

"The term 'capital invested' as used in this section means:
" * * * * * * *
" (b) In the case of partnerships the capital contributed by the partners in accordance with their contract of partnership plus credits of such partners from liquidated profits not distributed, existing at the beginning of the taxable year to which the income belongs and appearing in the inventory book and in the liabilities of the partnership, and which have not been withdrawn during the taxable year."

Therefore, according to the statute, for any amount appearing in the return of the taxpayer to be considered as capital invested, it must be, in the case of partnerships, either contributed by the partners in accordance with their contract of partnership, or constituted by credits of such partners from undistributed liquidated profits existing at the beginning of the corresponding taxable year and appearing in the inventory book and in the liabilities of the partnership, and which have not been withdrawn during such taxable year.

There is no doubt whatever that none of the amounts in question was contributed as capital according to the contract of partnership by any of the partners; yet it is alleged by the appellant that they are part of the capital invested because they proceed from liquidated profits not distributed.

Let us hear again the trial judge in his weighing of the evidence in the light of the statute alleged to have been violated. He says:

"It appears from the evidence that by deed of April 1, 1919, executed before notary Francisco de la Torre Garrido, the commercial partnership of 'Successors of L. Villamil & Co., Ltd.', was constituted for a period of four years, with option to be extended, with a capital of $200,000 contributed as follows: $60,000 from Gumersindo Suárez García; $30,000 from Manuel Lomba y Peña; $30,000 from Enrique Mitjans Juliá; $30,000 from José León Núñez; $20,000 from Mercedes Fernández y Fernández; $7,500 from Celso Suárez Picó; $7,500 From Enrique Vila Gama; $7,500 from Ramón García Cobián; and $7,500 from Bartolomé Esteva Flaquer; such contributions having been made by them in cash, credits in their favors, furniture, stock and real property; and that the said partnership took over the assets and liabilities from another which under the same name was terminated on March 31, 1918, and which had been constituted by public deed of April 1, 1914, by its partners Gumersindo Suárez García, Manuel Lomba Peña, José León Núñez, Enrique Mitjans Juliá, and Mercedes Fernández y Fernández.

"The former partnership constituted by the deed of 1914 was dissolved on March 31, 1918, and it should be noticed that four new partners with a contribution each of $7,500 were admitted into the new partnership constituted by the deed of 1918.

"It does not appear from the above deed of 1918, which is the instrument embodying the agreements and stipulations of the partnership (as private agreements between partners are prohibited by section 119 of the Code of Commerce), that the partners Gumersindo Suárez contributed any amount other than $60,000 nor that the $200,000 in current account were undistributed credits, as it appears from the evidence that the above sum of $200,000 came from liquidated profits of the previous partnership which had been distributed since the plaintiff partnership was paying interest thereon to the partner, there having been deducted from the gross income for the purpose of taxation the sum of $12,725.48 as interest paid on the credits of the said partner Gumersindo Suárez for 1919, and for the same reason the sum of $13,665.10 for 1920. That being so, the above amount of $200,000, on which the plaintiff has paid interest, does not belong to it but to the partner who had placed it as a loan and was for that reason in the possession of the partnership.

"As to the undistributed profits from the previous partnership, corresponding to 1918, and amounting to $191,665.64, they are similarly placed as the $200,000 of the partner Gumersindo Suárez,

with the sole difference that no interest thereon was being paid by the partnership, because from the partnership contract of April 1, 1918, the same does not appear as a contribution to the social capital, nor is that sum a credit of the partnership from undistributed liquidated profits of the partnership. Therefore the conclusion is reached that the aforesaid sum of $191,665.64 does not comply with the provisions of subdivision (b) of section 18 of the aforesaid Act of 1921.''

The facts stated by the judge are fully corroborated by the record, and his reasoning appears to us to be logical. The appellant does not cite us in its brief to any jurisprudence or precedents destroying the force of said reasoning. Nor are we convinced of the contrary by appellant's own arguments.

We are therefore of the opinion that the tax was properly computed and assessed and, consequently, that the action was properly dismissed.

The judgment appealed from must be affirmed.